IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

**ANTHONY WILSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 13-00998        W. Mark Ward, Judge

_____

**No. W2017-02270-CCA-R3-PC**

_____

The Petitioner, Anthony Wilson, filed a post-conviction petition seeking relief from his convictions of first degree premeditated murder and attempted first degree murder and his accompanying effective life sentence. In the petition, the Petitioner alleged that his trial counsel was ineffective by failing to (1) hire an investigator, (2) meet with the Petitioner and keep him adequately informed about the case, (3) file motions "to challenge the evidence," (4) seek a jury instruction regarding the defense of others, (5) properly cross-examine witnesses, and (6) raise objections at trial. After a hearing, the post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

John Catmur (on appeal) and Kirk Stewart (at trial), Memphis, Tennessee, for the Appellant, Anthony Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Amy P. Weirich, District Attorney General; and Glenda Adams, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The Petitioner and two co-defendants, Deangelo Taylor and Alfred Robinson, were charged with the first degree murder of Lyle King, attempted first degree murder of

Julian Williams, and employing a firearm during the commission of a dangerous felony. State v. Anthony Wilson, No. W2014-01054-CCA-R3-CD, 2015 WL 8555599, at *1 (Tenn. Crim. App. at Jackson, Dec. 11, 2015). After a joint trial, the Petitioner and Taylor were convicted of first degree murder and attempted first degree murder, and the trial court dismissed the employing a firearm charge. Id. at *1, 12. Robinson was found not guilty of all charges. Id. at *1.

On direct appeal, this court stated:

> [the Petitioner's] case concerns a large street fight that erupted in Memphis, Tennessee. The altercation began because Ronisha[1] believed that Stefanie had stolen a camera from someone's home. Multiple members of each girl's family became involved in the argument, which escalated to a physical altercation on McMillan Street on October 20, 2010. Initially, the fight only involved the women of each family; however, male members of the families and males who were observing the fight soon joined the fray. Lyle King and Julian Williams joined the altercation on behalf of Stefanie's family members, and [the Petitioner, Taylor, and] Robinson sided with Ronisha's family. The physical altercation ultimately led to a shootout, causing the death of the victim, Lyle King, and the injury of Julian Williams and . . . Taylor.

Id. (footnote omitted). The trial court sentenced the Petitioner to concurrent sentences of life for the murder conviction and twenty years for the attempted murder conviction. Id. at *12. On direct appeal, this court affirmed the Petitioner's convictions and sentences. Id. at *1.

Subsequently, the Petitioner filed a pro se petition for post-conviction relief. An attorney was appointed to represent him, and two amendments were filed. In pertinent

---

[1] On direct appeal, this court explained:

> Because several parties and witnesses share the same last name, for clarity, we will refer to everyone with the last names "King," "Johnson," and "Carter" by their full name or by their first name only. It is also the policy of this court to protect the identity of minors; as such, we will refer to any known minors by their first names. In doing so, we mean no disrespect.

Anthony Wilson, No. W2014-01054-CCA-R3-CD, 2015 WL 8555599, at *1 n.1.

part, the Petitioner alleged that his trial counsel was ineffective by failing to (1) hire an investigator, (2) meet with the Petitioner and keep him adequately informed about the case, (3) file motions "to challenge the evidence," (4) seek a jury instruction regarding the defense of others, (5) properly cross-examine witnesses, and (6) raise objections at trial.

At the post-conviction hearing, the Petitioner's trial counsel testified that he had been practicing law since 1992 and that eighty percent of his practice was criminal defense. He met with the Petitioner at the jail and in the courtroom. Trial counsel did not recall any favorable plea offers from the State; accordingly, he always knew the case would proceed to trial.

Trial counsel said that he obtained discovery from the State, which included witness statements, and reviewed it with the Petitioner. Trial counsel said that the Petitioner "was not very verbal" and that their conversations usually revolved around trial counsel's explaining the Petitioner's rights, the pending proceedings, and the evidence against him. Trial counsel asked the Petitioner to provide the names of any witnesses, such as alibi witnesses, that might need to be called at trial; however, the Petitioner never provided any such names.

Trial counsel said that nothing from his conversations with the Petitioner led him to believe hiring an investigator was necessary. Trial counsel acknowledged that the co-defendants' attorneys had hired investigators and that Taylor's attorney had called four witnesses at trial who were not on the State's witness list. Trial counsel did not recall trying to find witnesses who were not on the State's witness list. Trial counsel stated that he did not know what an investigator could have found that was not in the witnesses' statements provided in discovery.

Trial counsel said that most of the testimony at trial did not concern the Petitioner. Only three witnesses ever "put [the Petitioner] at the scene." Two of those witnesses had identified the Petitioner in their pre-trial statements, but they "changed their story on the stand." Specifically, trial counsel recalled that a woman named Chris Williams testified that she was "high on cocaine or -- and/or drunk, and/or had been using Xanax and/or marijuana" when she gave her statement to the police but that she was "clean" at the time of trial. Counsel said that a "gentleman" testified that he was drunk and had been smoking marijuana at the time he gave his statement identifying the Petitioner to the police. Counsel testified that Boyce, "a third gentleman who was . . . at the time a juvenile who we thought would have been charged as a co-defendant but he wasn't[,] . . . came in and just reversed on everything that he said with regard to [the Petitioner] being culpable for anything."

Trial counsel recalled that another witness, Jocelyn Key, initially identified someone other than the Petitioner from a photograph lineup. During her testimony, Key stated that she had been confused about what she was supposed to do after looking at the lineup. Trial counsel recalled that Key said she had seen a "second shooter," but trial counsel did not think she identified the Petitioner as the second shooter. Trial counsel thought Key was a helpful witness because Key said the second shooter was wearing a silver or gray shirt, and other witnesses who claimed the Petitioner was at the scene described him "wearing something else."

Trial counsel stated that the only witness who testified at trial that the Petitioner was at the scene was "a victim that lived."[2] Trial counsel said that part of his strategy was to show that Mr. Williams was the only person who said he saw the Petitioner with a gun and that Mr. Williams was not credible because he was angry due to the shooting.

Trial counsel said that he did not cross-examine the State's witnesses about any favorable statements they made at trial, explaining, "Any time I'm trying a case and some witness says something that's going to help my client whether they intend to or not[,] my strategy is always . . . just to shut up." Trial counsel said that if he had cross-examined a witness about favorable testimony, the witness might have "had some recall" and given unfavorable testimony.

Trial counsel said that he had three or four discussions with the Petitioner about whether he would testify at trial and that the Petitioner did not want to testify. The defense strategy, which was that the Petitioner was not present at the scene and did not have a gun, did not depend on the Petitioner's testimony.

Trial counsel said that he had discussions prior to trial with the co-defendants' attorneys; some of the discussions concerned motions, but most of the discussions were to "bounce things off of each other." Trial counsel orally joined in a couple of the motions filed by the co-defendants' attorneys to "mak[e] sure [the Petitioner] was covered," but trial counsel did not think "there was any real substance to the motions with regard to" the Petitioner.

Trial counsel said that because his theory of defense was that the Petitioner was not at the scene and did not have a gun, he did not want to put forward an alternative theory of defense of others. Trial counsel said that in order to argue successfully that the Petitioner acted in defense of others, the Petitioner essentially would have had to admit he was at the scene with a gun. Further, trial counsel thought the only person the

_____

[2] On direct appeal, this court identified the surviving victim as Julian Williams. Id. at *1. Because this opinion refers to another individual with the same surname, we will refer to this witness as Mr. Williams. No disrespect is intended.

Petitioner could have been defending was Taylor, whom trial counsel thought "was guilty as hell." Because of Taylor's clear guilt, trial counsel wanted to "dig a ditch between" the Petitioner and Taylor and did not want to employ the same strategy as Taylor's attorney by pursuing a defense of others strategy. Moreover, trial counsel did not think the evidence supported Taylor's claim of defense of others. Trial counsel explained that in order to assert a valid claim of defense of others, a defendant must not be acting illegally; however, Taylor was acting illegally by being a convicted felon in possession of a gun.

On cross-examination, trial counsel said that he thought the witnesses testified mostly in the Petitioner's favor. Trial counsel did not attack any testimony he perceived as favorable. Trial counsel agreed that the trial strategy did not "depend on what the co-defendants were doing at all." Trial counsel said that he and the Petitioner agreed to pursue the strategy that the Petitioner was not at the scene and that he did not have a gun. Trial counsel reiterated that he did not want to pursue a strategy of defense of others because it would put the Petitioner "in the middle of that stuff." Trial counsel thought the better practice was to raise uncertainty regarding whether the Petitioner was at the scene.

Trial counsel noted that one witness testified that the second shooter was tall with light skin and "locks, dreads or plaits." Trial counsel said that only Taylor and Taylor's brother fit that description, which called into question the Petitioner's identity as the second shooter. Trial counsel thought the Petitioner's case "was going a lot better than the verdict indicated." Trial counsel agreed that he "challenged testimony that needed to be challenged" and "bolstered the testimony that needed to be bolstered."

Trial counsel said that Mr. Williams was the only witness who never wavered in his assertion that the Petitioner was at the scene. When cross-examining Mr. Williams, trial counsel did everything "within bounds" to "upset" and "agitate" him so the jury would that see that Mr. Williams was angry because he had been shot and wanted to implicate the Petitioner who was a named defendant.

The Petitioner testified that he had been indicted and was in jail when he met trial counsel for the first time. The Petitioner maintained that trial counsel visited him in jail infrequently. The Petitioner acknowledged that trial counsel showed him the discovery but asserted that they did "[n]ot really" discuss trial strategy. The Petitioner said that trial counsel did not ask him about any potential witnesses other than those who were on the State's witness list and that trial counsel never consulted with the Petitioner about whether to hire an investigator. The Petitioner asserted that trial counsel "was afraid, just wasn't objecting to anything you know what I'm saying as far as in my defense." However, the Petitioner said, "I'm not here to say [trial counsel] wasn't or he was" prepared to try the Petitioner's case. The Petitioner said that his complaints about trial

counsel concerned "[t]he investigation as far as investigating certain individuals on my behalf" and trial counsel's "failure to cross examine witnesses."

On cross-examination, the Petitioner agreed that trial counsel had relied on the Petitioner to tell him about any potential witnesses. The Petitioner acknowledged that he did not need to provide trial counsel with the contact information of any potential witnesses because "the witnesses that the State ha[d on the witness list were] the witnesses that [the Petitioner] wanted [trial counsel] to contact." The Petitioner acknowledged that the witnesses "never spoke on [him]"; therefore, trial counsel "left those witnesses alone." Nonetheless, the Petitioner maintained that trial counsel was "supposed to investigated [sic] the whole witnesses." The Petitioner agreed that the State had three witnesses who initially had put the Petitioner at the scene and that two of those witnesses recanted their claim at trial. Nevertheless, he asserted that further investigation "would have done a whole lot."

The Petitioner acknowledged that trial counsel tried to distance him from Taylor in order to establish the Petitioner's innocence and that the jury's failure to believe the Petitioner was innocent was not trial counsel's fault. The Petitioner further acknowledged that trial counsel cross-examined witnesses and bolstered witnesses' testimony whenever necessary. The Petitioner complained that trial counsel did not object "to a lot of stuff," but he could not specify any objections that should have been made. The Petitioner agreed that after witnesses testified the Petitioner was not at the scene, trial counsel did not need to object to their testimony. The Petitioner agreed that trial counsel cross-examined Mr. Williams about his assertion that the Petitioner was at the scene of the shooting. Finally, the Petitioner agreed that trial counsel "protected [the Petitioner's] rights throughout that trial."

After the hearing, the post-conviction court issued an order, stating that the petitions for post-conviction relief "allege in true 'shotgun' form a multitude of allegations." The post-conviction court held that the Petitioner failed to establish ineffective assistance of counsel and denied post-conviction relief. The Petitioner appeals this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, the Petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded

their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When the Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the Petitioner "bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the Petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause [the Petitioner] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The Petitioner alleges that the post-conviction court erred by ruling that his trial counsel was ineffective by failing to (1) hire an investigator, (2) meet with the Petitioner and keep him adequately informed about the case, (3) file motions "to challenge the evidence," (4) seek a jury instruction regarding the defense of others, (5) properly cross-examine witnesses, and (6) raise objections at trial. The State responds that the post-conviction court correctly denied post-conviction relief.

On appeal, the Appellant focuses on trial counsel's failure to hire an investigator. The Petitioner notes that Taylor's attorney discovered "four witnesses for her client" but

concedes that trial counsel was not "required by law" to find a specific number of witnesses. The Petitioner further concedes that he had not found any additional witnesses and did not have any witnesses testify at the post-conviction hearing. The Petitioner contends that the post-conviction court "erred in failing to find [trial counsel] as ineffective because his strategy and tactical choices were both uninformed and not based upon adequate preparation." The Petitioner "submits that as a matter of law, the post-conviction court erred in failing to find [trial counsel's] performance deficient for not hiring an investigator in a first-degree murder case." In other words, the Petitioner essentially claims that because of counsel's failure to hire an investigator, this court should presume that counsel was ineffective.

Regarding the Petitioner's claim that trial counsel failed to properly investigate the case, the post-conviction court found that the Petitioner "failed to identify any specific information or witnesses that could have been discovered; and, more importantly no such additional witnesses were called to testify in the post-conviction evidentiary hearing." The evidence does not preponderate against this finding. See William T. Minton v. State, No. E2015-00986-CCA-R3-PC, 2016 WL 2605782, at *6 (Tenn. Crim. App. at Knoxville, May 4, 2016). "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As we stated, the Petitioner acknowledged that he did not locate or present any additional witnesses. We may not speculate on what benefit any witness(es) might have offered to the Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. The Petitioner is not entitled to relief in this regard.

The Petitioner contends that trial counsel failed to meet with the Petitioner and "keep him informed about defense strategy, the work being performed on the case, the strength of the evidence and possible defenses." Trial counsel testified that he met with the Petitioner at the jail and in the courtroom. Trial counsel further testified that he reviewed the discovery with the Petitioner, informed the Petitioner of his rights, talked with the Petitioner about whether he should testify, and that they discussed strategy. The post-conviction court found that the Petitioner's testimony regarding the number of times he met with trial counsel was unclear and that the Petitioner acknowledged trial counsel provided him with discovery. The post-conviction court also found that the Petitioner's "vague and non-specific testimony" provided no "real evidence" suggesting that trial counsel was deficient or that the Petitioner suffered any prejudice. We agree. The Petitioner is not entitled to relief in this regard.

The Petitioner summarily contends that trial counsel was ineffective by failing to file "'motions to challenge the evidence,'" "fail[ing] to properly cross-examine Jocelyn

Key, Robert Wilkie, and other witnesses," and failing to make objections at trial. This court previously has stated:

> It is well settled that when [the] Petitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, [the] Petitioner asks the [c]ourt to grant relief based upon mere speculation. Black[], 794 S.W.2d [at] 757 . . . . The same standard applies when [the] Petitioner argues that counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. In order to show prejudice, [the P]etitioner must show . . . that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. Vaughn v. State, 202 S.W.3d 106, 120 (Tenn. 2006) (citing Strickland, 466 U.S. at 687 . . . ).

Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. at Nashville, Sept. 12, 2011). "In other words, it is incumbent upon [the P]etitioner to prove that what he says trial counsel should have done would have had merit and produced admissible, relevant evidence." Demarcus Sanders v. State, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. at Jackson, Nov. 8, 2013).

The Petitioner did not explain any specific motions trial counsel should have filed, the evidence that should have been challenged, the questions that should have been asked of the witnesses, or the objections that should have been made. Notably, the Petitioner failed to mention Wilkie at all during the post-conviction hearing. The post-conviction court held that the Petitioner failed to prove that trial counsel was deficient or that the Petitioner suffered prejudice as a result of trial counsel's representation. The Petitioner is not entitled to relief in this regard.

The Petitioner contends that trial counsel was ineffective by failing to present proof regarding a defense of others or to seek an instruction regarding the defense of others. The post-conviction court found that the Petitioner did not present any proof regarding a defense of others. Further, the post-conviction court implicitly accredited trial counsel's testimony that the evidence did not support a defense of others and that he chose not to pursue a defense of others as a matter of trial strategy because it would require the Petitioner to admit being one of the shooters at the scene. "On a claim of

- 9 -

ineffective assistance, 'the [P]etitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings.'" Dellinger v. State, 279 S.W.3d 282, 295 (Tenn. 2009) (quoting Thompson v. State, 958 S.W.2d 156, 162 (Tenn. Crim. App. 1997)).  The Petitioner is not entitled to relief in this regard.

### III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE